IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 14, 2001 Session

## JOHNNY WAYNE GARNER and RICHARD DARRELL MILLER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Giles County**
**No. 9155 9171      Stella L. Hargrove, Judge**

**No. M2000-01258-CCA-R3-PC - Filed May 29, 2001**

Both Petitioners appeal from the post-conviction court's denial of their post-conviction relief petitions. The Petitioners claim ineffective assistance of counsel at trial and on appeal for failing to object to an erroneous jury instruction and failing to raise the erroneous jury instruction in their direct appeal. The post-conviction court found the jury instruction to be erroneous; however, it denied relief. After a thorough review, we conclude that the jury instruction was erroneous and prejudicial to the Petitioners and find that trial and appellate counsel were ineffective for failing to object to the erroneous jury instruction at trial and for failing to raise it on direct appeal. Accordingly, we reverse the post-conviction court's denial of relief and remand the Petitioners' cases to the trial court for new trials on the issues of aggravated arson.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded for a New Trial**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Timothy P. Underwood, Pulaski, Tennessee, for the appellant, Johnny Wayne Garner.

Leslie Curry-Johnson, Nashville, Tennessee, for the appellant, Richard D. Miller.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Richard H. Dunavant, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On November 4, 1996, the Petitioners, Johnny Wayne Garner and Richard Darrell Miller, were convicted of voluntary manslaughter and aggravated arson. The Petitioners appealed their convictions and sentences; however, this court upheld their convictions and sentences. Permission to appeal was denied on March 15, 1999. Pursuant to the Post-Conviction Relief Act the Petitioners filed timely petitions seeking relief. The Petitioners' claimed that trial and appellate counsel were ineffective for failing to object to an erroneous jury instruction at trial and for failing to raise the erroneous jury instruction on direct appeal The post-conviction court held a post-conviction hearing and denied the Petitioners' request for relief. The Petitioners subsequently filed notices of appeal, and this post-conviction appeal followed.

**FACTS**

During the early morning hours of October 27, 1995, the body of the victim in the instant case, "Bud" Wright, was discovered in his trailer after the Pulaski Fire Department extinguished a fire that occurred thereto. The day prior to the discovery of the victim's body, October 26, 1995, the Petitioners spent at least part of the day with the victim. According to statements made by the Petitioners, they left the victim's trailer sometime around six o'clock that evening. Petitioner Miller claimed that when he and Garner left the victim's trailer there were three unidentified men with the victim. Testimony from other witnesses, however, placed both Petitioners at the victim's trailer until about 10:30 p.m. that night. One witness testified that approximately ten minutes after the Petitioners left the victim's trailer he heard a loud pop and saw a "big glow in the sky." Due to signs of a struggle in the trailer the and trauma to the victim arson was suspected.

A thorough investigation followed and signs of foul play surfaced. Specifically, Dr. Charles Harlan, a forensic pathologist, found three concurrent causes of death: "blunt trauma to the [victim's] chest, inhalation of carbon, and acute ethanolism." Further, the victim's trachea was examined and no soot was present. Since no soot was found in the victim's trachea, the forensic pathologist concluded "that [the victim] was not alive at the time the body was burned...."

On October 27, 1995, Petitioner Garner was arrested for public intoxication and transported to the police station. On the way to the police station Petitioner Garner told police that he couldn't believe he was being arrested for the victim's death. The Petitioner was advised to discuss the matter with an investigator. Both Petitioners were subsequently arrested and indicted for first degree murder and aggravated arson.

The Petitioners were ultimately convicted of voluntary manslaughter and aggravated arson. However, the Petitioners contend that if the jury had not been given a faulty jury instruction it is likely that the jury would not have convicted them of aggravated arson. Specifically, at the end of the Petitioners' trial the trial judge instructed the jury that "[i]f the defendant is convicted of ... aggravated arson, he will be eligible for parole after service of 30 percent of his sentence imposed

by the court." The trial court further instructed the jury that "the period of time may be shortened by sentencing credits that may be earned by the defendant. The defendant may earn and be credited with between zero and 16 additional days for every 30 days he serves." Both sides agree that the jury instruction was erroneous. Tennessee Code Annotated § 40-35-501 (i)(2)(J) provides that a person committing the offense of aggravated arson on or after July 1, 1995, shall serve one hundred percent (100%) of the sentence imposed less sentence credits earned and retained. The same section further provides that no sentence reduction credits shall operate to reduce the sentence imposed by more than fifteen percent (15%).

The Petitioners' filed petitions seeking post conviction relief, which were heard on May 3, 2000. During the hearing counsel of both Petitioners at the jury trial and on direct appeal admitted that they had missed the erroneous instruction. The post-conviction court ultimately denied the Petitioners' petitions for post conviction relief, holding (1) that since the Petitioners failed to raise the erroneous jury instruction on direct appeal, and since the erroneous jury instruction did not raise a question of constitutional dimensions, it was not proper under the Post-Conviction Procedure Act, Tenn. Code. Ann. §40-30-210(f), and (2) that the Petitioners were not denied effective assistance of counsel.

## ANALYSIS

A. Standard of Review

This court reviews a claim of ineffective assistance of trial counsel and appellate counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995). The Petitioners have the burden of proving that (1) counsels' performance was deficient, and (2) that the deficient performances resulted in prejudice to the Petitioners so as to deprive them of fair trials. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990).

The test in Tennessee to determine whether counsel provided effective assistance is whether his performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The Petitioners must overcome the presumption that their counsels' conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999). Therefore, in order to prove a deficiency, the Petitioners must show "that their counsels's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S.

at 689, 104 S. Ct. at 2065. The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

B.  Analysis

Prior to entering into our analysis we pause to note that at the time the Petitioners in the instant case were convicted, Tennessee Code Annotated § 40-35-201(b)(1) permitted either party to file a motion with the court that had the effect of requiring the court to charge the jury with the possible penalties for the offense charged and all lesser included offenses.  Further, according to Tennessee Code Annotated § 40-35-201(b)(2)(A)(i), within such charge the judge was required to "include an approximate calculation of the minimum number of years a person sentenced to imprisonment ... must serve before reaching such person's earliest release eligibility date."  This provision was repealed by the General Assembly in 1998, and as such, for all non-capital criminal trials subsequent to May 19, 1998, statutory directives set forth that the "judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on possible penalties for the offense charged nor all lesser included offenses."  1998 Tenn. Pub. Acts ch. 1041, § 1; Tenn. Code. Ann. § 40-35-201 (Supp. 1998).  As set forth above, the Petitioners in the instant case were convicted of the crimes set forth herein on November 4, 1996.  Thus, the provisions of Tennessee Code Annotated § 40-35-201 were clearly in force at the time of the Petitioners' convictions.  As such, it was proper for the trial judge to charge the jury with the possible penalties for the offenses charged and the minimum sentences the Petitioners would have to serve prior to their earliest release eligibility dates.

We continue our analysis by visiting several cases that are directly on point with the issue raised in the instant case, and which fell under Tennessee Code Annotated § 40-35-201 prior to its repeal in 1998.  In State v. Cook the defendant was convicted of three counts of aggravated rape and two counts of aggravated sexual battery. The defendant was sentenced to twenty five-years on each of three aggravated rape convictions and seven years on each of the two aggravated sexual battery convictions.  The judge charged the jury with incorrect sentence ranges for aggravated rape and aggravated sexual battery.  When the case was appealed to the Tennessee Supreme Court, the court reversed the convictions and remanded the charges to the trial court for a new trial.  The Tennessee Supreme Court held that "T.C.A. 40-35-201(b) gives the defendant a claimable statutory right to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence" and to deny this "statutory right constitutes prejudice to the judicial process, rendering the error reversible under Rule 36(b) T.R.A.P."  State v. Cook, 816 S.W.2d 322, 326-27 (Tenn. 1991).

Again, in 1999, the Tennessee Supreme Court addressed the issue of erroneous jury instructions in State v. Meyer.  In Meyer the court charged the jury that if the defendant was convicted of rape of a child, his sentence would range from twenty to forty years, and that his earliest

release eligibility date would be after serving 5.73 years. In actuality, however, Tennessee Code Annotated § 40-25-501(i)(1) and (2) (Supp. 1995) set forth that a defendant convicted of rape of a child is required to serve 100% of a sentence imposed by a court, less sentencing credits earned and retained, up to 15%. The defendant was subsequently convicted of rape of a child.

When the Meyer case was taken by the Tennessee Supreme Court, the court made the same findings as this court, that the "trial court erred by instructing the jury that the Defendant would be eligible for release following a conviction of child rape upon serving 5.73 years of his sentence." State v. Meyer, 994 S.W.2d 129, 131 (Tenn. 1999). This court originally found this erroneous jury instruction to be harmless error; however, the Tennessee Supreme Court found this error to be reversible and remanded the case for a new trial. In its opinion the Tennessee Supreme Court echoed its holding in Cook, and agreed with the defendant that he was prejudiced by the erroneous jury instruction. It further set forth that "[i]t is conceivable that the defendant would have been convicted of a lesser offense had the jury known that the Defendant would not be eligible for early release." Id. at 132.

The Tennessee Supreme Court is not the only court to have addressed the issue of erroneous jury instructions. This court recently addressed this issue in two separate cases, Dean v. State, C.C.A. No. E1998-00135-CCA-R3-PC, 2000 WL 337552 (Tenn. Crim. App., filed March 21, 2000, at Knoxville) (a case that raised the issue of an erroneous jury instruction in an ineffective assistance of both trial counsel and appellate counsel on post-conviction); and State v. Burnett, C.C.A. No. M1999-00179-CCA-R3-CD, 2000 WL 62110 (Tenn. Crim. App., filed January 26, 2000, at Nashville) (a case that dealt with the issue of an erroneous jury instruction through plain error in a direct appeal).

In Dean the trial court charged the jury that "the sentence range for attempted second degree murder was three to ten years, when the actual sentence range was twelve to twenty years." Dean 2000 WL 337552, at *2. This court held in Dean that "the right to effective assistance of counsel is itself a constitutional issue," and thus, "a proper issue for post-conviction consideration." Id. at *5. This court ultimately concluded that trial counsel's performance fell below the acceptable range of competence of attorneys in this state because he failed to recognize Cook "as the current state of the law and ... fail[ed] to assert the Petitioner's rights under Cook in the motion for a new trial." Id. at *6. This court also found that appellate counsel's performance fell below the acceptable range of competence of attorneys in this state because he failed "to assert the Petitioner's rights under Cook on direct appeal." Id. at *7. This court went on to find that the deficiency prejudiced the Petitioner, setting forth that the "prejudice [was] obvious in this instance ... [and] had [trial and/or appellate] counsel asserted the Petitioner's rights under Cook, he would have been granted a new trial ... as Cook mandates a new trial based on the statutory right to correct [a] charge on the range of punishment." Id. Based upon this conclusion, both trial counsel and appellate counsel were found to be ineffective.

In Burnett the trial court erroneously charged the jury that if the defendant was convicted of aggravated arson "he would be eligible for release in 1.07 years." Burnett, 2000 WL 62110, at *3.

In actuality, however, the earliest possible release date for the defendant would have been after the defendant served 12.75 years. The defendant was subsequently convicted of aggravated arson. After this court heard the case, we held that this error was plain error and reversed the judgment of the trial court and remanded the case for a new trial.

We now turn to the Petitioners' claims of ineffective assistance of counsel in light of these cases. We first address whether trial counsel's and appellate counsel's performance fell below the acceptable range of competence of attorneys in this state. Clearly the facts in Dean, where trial counsel's failure to object to the erroneous jury instruction and appellate counsel's failure to assert the Petitioner's rights on direct appeal are directly in line with the instant case. In the instant case trial counsel for both Petitioners failed to object to the erroneous jury instruction and appellate counsel for the Petitioners failed to raise the rights of the Petitioners on direct appeal. Further, both trail counsel and appellate counsel acknowledged that they completely missed the erroneous jury instruction. Whether trial counsel or appellate counsel recognized such rights is irrelevant, however. Counsels' failure to undertake the aforementioned actions was clearly deficient as is readily reflected in the growing line of case law on the issue.

We next turn our attention to address whether counsels' deficient performance prejudiced the Petitioners. As this court found in Dean, the "prejudice [was] obvious in this instance ... [and] had [trial and/or appellate] counsel asserted the Petitioner's rights under Cook, [the Petitioners] would have been granted ... new trial[s] ... as Cook mandates a new trial based on the statutory right to correct [a] charge on the range of punishment." Dean 2000 WL 337552, at *6. This court is unable to find any significant differences between Dean and the instant case, and as such the outcome in the instant case must be identical to the outcome in Dean. The Petitioners have carried the burden of proving ineffective assistance of both trial counsel and appellate counsel.

## CONCLUSION

The judgment of the post-conviction court is reversed, the Petitioners' convictions for aggravated arson are vacated, and this matter is remanded to the trial court for new trials on the issue of aggravated arson.

_____
JOHN EVERETT WILLIAMS, JUDGE